**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MERRYL SUE ENG,<br><br>Plaintiff,<br><br>v.<br><br>SCRANTON UC SERVICE CENTER, PA DEP'T OF LABOR AND INDUSTRY<br><br>Defendant. | NO. 3:08-CV-1213<br><br>(JUDGE CAPUTO) |

**MEMORANDUM ORDER**

Presently before the Court is Plaintiff Merryl Sue Eng's motion to appoint counsel (Doc. 5). This Court's July 3, 2008 Order granted Plaintiff's request to proceed *in forma pauperis* in this civil action, in which she asserts claims of discrimination on the basis of religion and disability and failure to provide reasonable accommodations for disability.

Civil litigants have no constitutional or statutory right to counsel. *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). A district court, however, possesses broad discretion to appoint counsel for an indigent civil litigant. *See* 28 U.S.C. §1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."); *Tabron v. Grace*, 6 F.3d 147, 154 (3d Cir. 1993); *Parham*, 126 F.3d at 457. The Third Circuit Court of Appeals has set forth several factors to assist district courts in determining when appointment of counsel is appropriate. Preliminarily, the plaintiff's claim must have some merit in fact and law. *Tabron*, 6 F.3d at 155. If the claim has merit, then the district court should consider the following factors: 1) plaintiff's ability to present his or her own case, 2) the complexity of the legal issues, 3) the degree to which

factual investigation will be necessary and the ability of plaintiff to pursue such investigation, 4) whether a case is likely to turn on credibility determinations, 5) whether the testimony of expert witnesses is required, and 6) whether plaintiff can attain and afford counsel on his own behalf. *Id.* at 155-58; *see also Parham*, 126 F.3d at 457.

The requisite finding of "some merit" involves a more searching inquiry than the merit determination involved in an *in forma pauperis* application, which courts grant unless they make a determination that the claim is "indisputably meritless" or that its factual contentions are "clearly baseless." Plaintiff's Complaint asserts claims under Title VII and the Americans with Disabilities Act (ADA) of discrimination "for being dyslexic, having cancer, having heart problems, and religion, and failure to provide reasonable accommodations." (Compl., Doc. 1, a 1.) Regarding exhaustion and timeliness issues, Plaintiff has submitted five (5) "right-to-sue" letters from the Equal Employment Opportunity Commission ("EEOC"), corresponding with her five (5) EEOC filings, each dated within ninety (90) days before the filing of her Complaint. (*See* Attachments to Compl., Doc. 1 at 34-39.) The record of the administrative filings reveals that in these cases, Plaintiff raised at least some of the claims she now asserts. (*See* Compl., Doc. 1, at 3-6 (indicating that Plaintiff raised religious discrimination and retaliation claims and "should have" also included claims of disability discrimination and failure to accommodate in her administrative filings)). Regarding the factual and legal merit of her case, Plaintiff's claims are recited in general terms and the case is in its preliminary stages, making it difficult to assess merit at this point; as such, I will assume merit and proceed to consider the *Tabron* factors. *See Houston v. Luzerne County Children & Youth*, No. 3:06-CV-

2118, 2007 WL 2593782, at *1 (M.D. Pa. Sept. 4, 2007) (Caputo, J.).

(1) The Ability to Present the Case. Plaintiff requests that the Court "explain in words I can understand what my next step would be" and "appoint an attorney I can consult with and that attorney can explain to me, each step of the process so that I am better able to get a complete understanding of the entire court process." (Doc. 5.) She also indicated in her Complaint that she "had problems with interpreting claims because of my disability of dyslexia and Attention Deficit Disorder." (Compl., Doc. 1, at 3.) To her Complaint, she attached a psychological evaluation which stated that her "overall intellectual abilities are in the average range," and "there is no evidence of a learning disability," but stated also that test results "suggest mild to moderate difficulties with attention, . . . more difficulties with visual attention, . . . mild to moderate anxiety and depression, . . . some disorganization and tangential thinking along with persistent themes of suspicion, disorientation and isolation." (Neuropsychological Learning Evaluation, John R. Harvey, Ph.D., Allied Services, Exhibit to Doc. 1, at 12.) The report concluded that Plaintiff did "not appear to have any significant cognitive weakness that would interfere with work, [but] her depression and anxiety and her somewhat resistant, suspicious interpersonal style along with somewhat disorganized thinking may indeed have an impact on her work performance." (*Id.*) Additionally, Plaintiff has so far represented herself in proceedings before the Equal Employment Opportunity Commission (EEOC). The first factor is thus mixed.

(2) The complexity of the legal issues. This Court has previously found that claims of an employer's alleged racially discriminatory failure to allow a plaintiff to compete for a promotion and to perform light work were "fairly straightforward discrimination claims."

*Still v. Finnerty*, No. 3:06-0167, 2006 WL 1310887, at *2 (M.D. Pa. May 10, 2006) (Caputo, J.). Here, similarly, Plaintiff challenges as discriminatory and retaliatory her discharge from work, disciplinary action, harassment, and failure of her employer to assist her when she requested accommodations. (Compl., Doc. 1.) While Plaintiff's discrimination claims are similar to those in *Still*, she does raise multiple types of discrimination (retaliation, religion-based discrimination, disability-based discrimination and failure to accommodate) rather than one type. Additionally, Plaintiff's disability-based claims are slightly less straightforward than the racial discrimination claims in *Still* because Plaintiff's status as disabled, that is, her membership in the protected class, may be an issue. This factor is thus also mixed.

(3) Need for Factual Investigation. Much of Plaintiff's evidence will likely come from her own account of events and testimony from defendants and others involved. This factor weights against appointment of counsel. *Houston*, 2007 WL 2593782, at *1.

(4) Whether the Case Is Likely To Turn on Credibility Determinations. This case is likely to turn on credibility determinations, which weighs in favor of appointing counsel. This Court has noted in the past that the presence of credibility issues "is a circumstance that exists in virtually every civil rights case" and has held that the likelihood a case will turn on credibility determinations does not, itself, necessarily justify appointing counsel where, for instance, "there do not appear to be any special circumstances that would appear to make cross examination of witnesses unusually difficult for a *pro se* plaintiff." *See Still*, 2006 WL 1310887, at *2. Here, however, there is some evidence that Plaintiff has "resistant, suspicious interpersonal style along with somewhat disorganized thinking."

(Report, Exhibit to Doc. 1, at 12.) This may indeed impact on Plaintiff's ability to cross examine witnesses.

(5) Need for Expert Testimony. It is unclear whether this case will require expert testimony. If Plaintiff's disability discrimination and failure-to-accommodate claims have been properly exhausted, then expert testimony related to Plaintiff's status as disabled and to the reasonableness of the accommodations she requested may be needed. It would be speculative at this point, however, to assign weight to this factor.

(6) Ability to Attain and Afford Counsel. As Plaintiff has been granted *in forma pauperis* status, Plaintiff cannot afford counsel on her own behalf. The sixth factor weights in favor of appointing counsel.

In sum, two (2) factors weigh in favor of appointing counsel, one (1) weighs against it, and the remaining three (3) factors do not, at least without speculation on the part of the Court, point clearly in one direction or the other. "As the Third Circuit Court of Appeals has emphasized, volunteer lawyer time is a scarce resource which should not be expended indiscriminately. The courts have an obligation to strive to ensure that this resource is allocated to the cases of the greatest merit and to those plaintiffs in greatest need of counsel." *Still*, 2006 WL 1310887, at *2 (internal citations omitted). As such I will not at this time exercise my discretion to appoint counsel for Ms. Eng. This decision, however, does not limit Ms. Eng's right to reapply for appointment of counsel at a later date should her circumstances change.

For the foregoing reasons, **NOW**, this 29th day of July, 2008, **IT IS HEREBY ORDERED** that Plaintiff's motion to appoint counsel (Doc. 5) is **DENIED**, without prejudice to Plaintiff's right to reapply if her circumstances change.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge